## KNIGHT *vs.* GORHAM & TRUSTEE.

Where one, for an agreed premium, entered into a contract with the payee of a note, to guaranty its payment at maturity by the maker, but without the request or knowledge of the latter ; and afterwards the maker, being in failing circumstances, but still ignorant of the guaranty, was induced by the payee to convey property to the guarantor, as a friend, in order to make provision for the payment of the note ;—it was holden that the latter could not retain this property against a foreign attachment, the guaranty having created no contract between him and the maker of the note, and the conveyance of the property being without consideration.

It appeared in the disclosure of *George Willis*, who was summoned as the trustee of the defendant in this case, that on the 15th of *May* 1826, *Gorham*, the defendant, gave to *Millions & Leavitt* his promissory note for \$603 02 payable in six months,

In *July* following, *Millions & Leavitt* being alarmed for the safety of several debts due to them, and of this among the others, procured *Willis*, for an agreed premium, to guaranty their punctual payment. This was done by a separate writing, and it was agreed that the transaction should be kept secret, lest it should injure the credit of the several debtors. The premium, given for the guaranty of this debt was about twenty-five dollars. In about a month afterwards *Gorham* failed ; and was at that time induced by *Millions & Leavitt*, at the suggestion of *Willis*, to place in the hands of the latter the schooner *Seaflower*, and her fare of fish, to secure the payment of this debt. But it did not appear that he knew any thing of the guaranty till some days after the transfer ; nor was any notice taken of the debt in the transfer of the property, which was made by an absolute conveyance to *Willis*, who, at the same time, accepted a draft, payable to *Gorham's* own order, for the amount of the proceeds, after paying any demands he might have against *Gorham*. He stated, however, that at this time he had no such demand. The note was then in one of the banks, where it had been discounted, on the indorsement of the payees alone. Soon after this transaction *Willis* informed the president of the bank that he should see the note paid at its maturity; and he accordingly paid it, some time after he was summoned as trustee in this action. The value of the property transferred to him did not exceed the amount of the note.

*Willis*, for the trustee, insisted upon his right to retain the property. The transaction was *bona fide*, and the property was placed in his hands expressly for the payment of that debt. Upon the faith of the assignment, the trustee promised to pay the debt to the bank, and afterwards actually paid it. The object of the debtor was to provide funds for its payment ; and it was of no consequence to him in whose hands it was placed, or who was liable as guarantor or indorser. His object, which was a lawful one, is effected by applying the funds to that specific purpose ; and they ought not now to be withdrawn from the possession of an innocent party, to be applied at his expense to any other.

*Owen v. Estes* 5 *Mass.* 330. *Cushing v. Gore* 15 *Mass.* 69. *Stevens v. Bell* 6 *Mass.* 339. 16 *Mass.* 275. 1 *Pick.* 462. 16 *Mass.* 476. *Van Staphorst v. Pierce* 4 *Mass.* 258.

*Fessenden*, *Deblois* and *Anderson*, for the plaintiff, denied the right of the trustee to retain the property, on the ground that his guaranty of the debt created no contract between him and *Gorham* ; and that he stood merely in the situation of a creditor, happening to have specific articles belonging to the debtor in his hands. *Allen v. Megguire & trustee* 15 *Mass.* 490.

PREBLE J. in delivering the opinion of the court, observed that the conveyance, instead of being made for the benefit of *Willis*, was evidently intended for the security of *Millions & Leavitt* as payees of the note. It was manifest that *Gorham*, at the time of the transfer, had no knowledge that *Willis* had guarantied the payment ; and between them, therefore, there was no privity, and no contract created by that guaranty. Had *Willis* been called upon for the amount of the note, by reason of his separate stipulation, the payment of that amount would not, of itself, have given him a right of action against *Gorham*. It was a distinct matter, collateral to the note ; between other parties, and upon another consideration. There being therefore no consideration moving from *Willis*, for the conveyance of the property in question, he holds it as the trustee of *Gorham*, and must be charged as such in this action.